IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JASON THOMAS VOWELL,<br><br>Defendant. | **MEMORANDUM DECISION<br>AND ORDER**<br><br><br>Case No. 2:14-cr-573-CW<br><br>District Judge Clark Waddoups<br><br>*Related Case No.*:<br>8:13-cr-94-T-23TGW (M.D. Florida) |

This matter is before the court on Jason Thomas Vowell's Motion to Amend Judgment. A Forfeiture Money Judgment was entered against Mr. Vowell on August 8, 2013, which held Mr. Vowell jointly and severally liable with two others for the amount of $1,818,960.  Mr. Vowell contends his counsel did not inform him about this potential forfeiture amount and that it is unreasonable in light of the minor role he played in a drug conspiracy.  The facts support that Mr. Vowell's role in the conspiracy was minor when compared to his co-defendants.  Nevertheless, the forfeiture amount was reasonably foreseeable based on the facts to which Mr. Vowell pled and admitted as the basis for his conviction.  The court therefore denies the Motion to Amend Judgment.

**FACTUAL BACKGROUND**

Mr. Vowell was indicted on February 20, 2013 in the Middle District of Florida, along with Chad Christopher Sunyich and Timothy Oneal Long.  Count One of the Indictment alleged, "[b]eginning on an unknown date, which was no later than 2011, and continuing until on or

about the date of the instant indictment," the defendant conspired to distribute 100 kilograms or more of marijuana.  Indictment, at 1 (Dkt. No. 3 in Case No. 8:13-cr-94).  In contrast, Count Two alleged that on or about January 18, 2013, the defendants possessed, with intent to distribute, a detectable amount of marijuana, while aiding and abetting each other and other persons.  *Id.*  Thus, Count One pertained to an ongoing conspiracy that spanned at least two years, while Count Two pertained to one discrete act.  Mr. Vowell pled guilty to Count One and was sentenced to one-year imprisonment.  The court dismissed Count Two.

On August 8, 2013, a Forfeiture Money Judgment was entered against Mr. Vowell.  The Judgment states the government "established that the defendants obtained at least $1,818,960 in proceeds as a result of the offense" charged in Count One.  Forfeiture Money Jdgmt., at 1 (Dkt. No. 96 in Case No. 8:13-cr-94).  The court therefore entered judgment for that amount against Mr. Vowell "jointly and severally . . . with co-defendants Chad Sunyich and Timothy Long."  *Id.* In the Sentencing Judgment, the court further ordered forfeiture of Mr. Vowell's airplane that was used to transport the drugs and $166,228 that was seized on January 19, 2013.  Sentencing Jdgmt., at 6 (Dkt. No. 111 in Case No. 8:13-cr-94).

Thereafter, Mr. Vowell completed his sentence, and his case was transferred to this district in November 2014 for continuation of his supervised release.  Based on the record before the court, Mr. Vowell has been compliant with all terms of his supervision.  At this time, Mr. Vowell accepts the forfeiture of his airplane, but asserts the money judgment is excessive because he had a one-time, limited role in what otherwise was a multi-year conspiracy.

Mr. Vowell provides the following explanation about the events surrounding his conviction:

> The background to my life-altering mistake began by allowing an old high school friend, whom I had not been in contact with in 20 years or so; charter my Piper Aerostar airplane to haul 87 pounds of marijuana. I felt that I was simply letting him use my plane for a charter fee and whatever he chose to do with the use of my plane for a one day period of time was his choice and not mine. I couldn't have been more wrong . . . .
>
> . . .
>
> I am the kind of man that accepts responsibility for my actions and in doing so accepted my incarceration feeling like I will have paid my debt to society and will be able to rebuild once released.

Motion to Amend, at 1 (Dkt. No. 5). Mr. Vowell then asserts the following:

> My Florida Attorney at the time of my plea told me that my plane would only be taken from me because that was the extent of my involvement in the case. The Co-Defendants in the case had evidentially [sic] been driving large quantities of marijuana for years prior to approaching me in a new scheme to transport via airplane. The only time I had ever been affiliated with any of this kind of criminal activity was this one-day instance. This is evident from my sentence. According to the prosecution and evidence, the total amount of marijuana that had been distributed and sold starting six years prior to my involvement was around 600-700 pounds. The other Co-Defendants were sentenced to 60 months under the minimum mandatory guidelines.

*Id.* at 2. Based on these grounds and the significant impact the Forfeiture Money Judgment has had on him and his family, Mr. Vowell asks the court to remove the judgment.

## ANALYSIS

### I.      STANDARD OF REVIEW

Mr. Vowell filed his motion as a pro se litigant. "A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by

lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted).  The Tenth

Circuit has stated:

> [T]his rule means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.  At the same time, we do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant.

*Id.*  Although Mr. Vowell's motion was not styled as a pleading, the court applies the same

liberal construction to it.  Liberally viewing Mr. Vowell's motion, he raises a claim for

ineffective assistance of counsel that allegedly resulted in an improper judgment of joint and

several liability and an excessive fine in violation of the Eighth Amendment.[1]

## II.     ALLEGED GROUNDS TO MODIFY FORFEITURE AMOUNT

An ineffective assistance of counsel claim typically is filed as a habeas petition.

Although a proper habeas petition has not been filed under 28 U.S.C. § 2241 or § 2255, the court

analyzes Mr. Vowell's claim to determine if he should be afforded an opportunity to correct the

deficiency.

A majority of circuits have held that § 2255 "affords relief only to prisoners claiming a

right to be released from custody."  *United States v. Bernard*, 351 F.3d 360, 361 (8th Cir. 2003)

(citing cases from six other circuits holding the same).  As a result, challenges under § 2255 to

---

[1]  Because "a criminal forfeiture is part of the defendant's sentence," typically, it "must be challenged on direct appeal or not at all."  *Young v. United States*, No. 06-2591, 2007 U.S. App. LEXIS 13894, at *4 (7th Cir. Apr. 9, 2007) (citations omitted).  In this case, however, Mr. Vowell is asserting ineffective assistance of counsel that resulted in an improper forfeiture.  The court thus construes his motion as a habeas petition.

modify restitution or forfeiture amounts based on ineffective assistance of counsel have been rejected. *See e.g.*, *Soldier v. United States*, No. 3:09-cv-1, 2009 U.S. Dist. LEXIS 17818, at *5-7 (D.N.D. Feb. 23, 2009). Because § 2255 provides an inadequate basis to address Mr. Vowell's ineffective assistance of counsel claim, the court looks to § 2241.[2] Assuming without deciding that his claim may be properly raised under § 2241, the court first turns to Mr. Vowell's joint and several liability objection.

### A. Joint and Several Liability Objection

Mr. Vowell asserts he does not believe it is "fair that I have to be financially responsible for 100% of the entire forfeiture money judgement that my co-defendants benefited from, purchased assets and they lived the life style due to their years of selling Marijuana." Mot. to Amend, at 2 (Dkt. No. 5). Mr. Vowell pled guilty to Count One, which charged him with conspiring with others to distribute at least 100 kilograms of marijuana. "There is no rule prohibiting a conspiracy conviction of a defendant who joined the conspiracy only shortly before the government dismantled it." *United States v. Hawkins*, 547 F.3d 66, 76-77 (2d Cir. 2008). Moreover, when a party "join[s] a conspiracy during its progress," that party may "be held liable for all acts done in furtherance of the scheme." *United States v. Gamble*, 541 F.2d 873, 877 (10th Cir. 1976) (citing *United States v. Thomas*, 468 F.2d 422, 425 (10th Cir. 1972)); *see also United States v. Robinson*, 390 F.3d 853, 882 (6th Cir. 2004) (stating "it has long been

---

[2] A § 2241 petition "must be filed in the federal district court where the movant is incarcerated." *Lee v. Oliver*, 574 Fed. Appx. 846, 847 (10th Cir. 2014) (citing 28 U.S.C. § 2241(d)). Although Mr. Vowell is no longer incarcerated, he is still on supervised release in the District of Utah. "Accordingly, he remains 'in custody' as required by both § 2241 and § 2255." *Laliberte v. United States Prob.*, No. 16-3048, 2016 U.S. App. LEXIS 9762, at *1 n.1 (10th Cir. May 26, 2016) (citing *United States v. Cervini*, 379 F.3d 987, 989 n.1 (10th Cir. 2004)).

established that a conspirator may join a conspiracy already in progress and be held responsible for actions done in furtherance of the conspiracy before he joined") (quotations, citation, and alteration omitted)).

According to Mr. Vowell's Plea Agreement, on multiple occasions between 2011 and January 2013, his co-conspirators smuggled large amounts of marijuana into Florida, with each shipment containing approximately ninety-nine pounds. They sold the marijuana for $2,500 to $2,600 per pound. His co-conspirators often met at the Chase Suites in Tampa, Florida to conduct their marijuana business. Mr. Vowell did not join the conspiracy until January 2013. In the early morning hours of January 18, 2013, he checked into Room 210 at the Chase Suite hotel room. DEA agents had the room under surveillance based on information from an informant. That same evening, the DEA agents searched the room pursuant to a warrant. They seized approximately 100 pounds of marijuana. "The marijuana was in two computer boxes and also multiple pieces of luggage." Plea Agmt., at 23 (Dkt. No. 67 in Case No. 8:13-cr-94).

By the time of the search, Mr. Vowell had already departed Tampa in his private plane. When he landed in Utah with one of his co-conspirators, the DEA met him at the airport. "A drug-detecting canine alerted on luggage carried by both defendants." *Id.* Mr. Vowell informed the DEA "they had just been in Tampa, and that he had personally taken two computer boxes to Tampa." *Id.* The DEA also found $133,447 in one bag that neither defendant claimed and $32,781 in two of Mr. Vowell's bags. "All of the money was bundled in $1,000 increments and banded together with rubber bands." *Id.* at 24.

These facts show that Mr. Vowell's involvement in the conspiracy was minor in comparison to his co-defendants. While they were involved in multiple drug transactions over

the course of two years, he was only involved in one, discrete transaction.  The nature of his involvement, however, showed he did more than simply allow his plane to be chartered.  He joined in the conspiracy to distribute marijuana and allowed his plane to be used for this purpose.  Moreover, he admitted in the plea agreement that even though he "only personally participated in the January 18, 2013 marijuana deal . . . it was foreseeable to [him] that the conspiracy involved more than 100 kilograms of marijuana." *Id.* at 19-20.  Indeed, his Plea Agreement refers to at least six shipments of drugs, each containing about 99 pounds of marijuana.  While the court may concur that a more reasoned forfeiture would have been based on the date Mr. Vowell joined the conspiracy, the law permits joint and several liability for all proceeds derived from a single conspiracy and the forfeiture amount was reasonably foreseeable to Mr. Vowell.

### B.     Excessive Fine Claim

The Eighth Amendment prohibits imposition of excessive fines.  U.S. Const., Amdt. 8.  The Supreme Court has addressed whether a forfeiture could fall with the scope of the Excessive Fines Clause.  *United States v. Bajakajian*, 524 U.S. 321 (1998), *superseded by statute on other grounds*, Pub. L. No. 107-56, §§ 319, 371, 372.  The Court explained "that at the time the Constitution was adopted, the word 'fine' was understood to mean a payment to a sovereign as punishment for some offense." *Id.* at 327 (quotations and citation omitted).  "Forfeitures— payments in kind—are thus 'fines' if they constitute punishment for an offense." *Id.*

In this case, the government sought forfeiture "[p]ursuant to 21 U.S.C. § 853 and Rule 32.2(b)(2) of the Federal Rules of Criminal Procedure."  Mot. for Forfeiture Money Jdgmt., at 1 (Dkt. No. 94 in 8:13-cr-94).  The Tenth Circuit has stated "criminal forfeiture under 853 is a part of the sentence" and "*punishment* for an offense when a conviction has been entered." *United*

*States v. Libretti*, 38 F.3d 523, 528-29 (10th Cir. 1994) (citations omitted) (emphasis added).

Because the forfeiture judgment against Mr. Vowell constitutes a punishment, it is subject to

Eighth Amendment analysis.

"[A] punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional

to the gravity of a defendant's offense." *Bajakajian*, 524 U.S. at 334.  Here, the Plea Agreement

referenced two marijuana shipments involving Mr. Long, Mr. Sunyich, and a co-conspirator.  It

further referenced four additional marijuana shipments involving a second co-conspirator.  Each

shipment contained about 99 pounds of marijuana, which were sold at $2,500 to $2,600 per

pound.  Multiplying 6 shipments by 99 pounds, at $2,500 per pound, results in $1,485,000 in

proceeds.  If the price is increased to $2,600 per pound, proceeds total $1,544,400.  The proceeds

show the magnitude of the crime.

The final forfeiture amount entered against Mr. Vowell and his co-defendants was

$1,818,960.  That amount is not so grossly disproportional to the conspiracy crime that it violates

the Eighth Amendment.  Again, while the court may disagree with holding Mr. Vowell equally

responsible with his co-defendants, it is well-established that once a person joins a conspiracy, he

may be punished for the entire enterprise.  And this court lacks authority to modify a judgment

that was lawfully entered.

### C.        Ineffective Assistance of Counsel

Having addressed Mr. Vowell's objection to joint and several liability and his claim

under the Eighth Amendment, the court may now turn to Mr. Vowell's ineffective assistance of

counsel claim.  To prove a claim for ineffective assistance of counsel, Mr. Vowell must show

that his "counsel's conduct so undermined the proper functioning of the adversarial process that

the [proceeding] cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

Mr. Vowell asserts that his counsel failed to advise him of the potential forfeiture amount. "A guilty plea must be knowing and voluntary." *Liberetti*, 38 F.3d at 529 (citations omitted). "The defendant's attorney and the court have a duty to apprise the defendant of the consequences of the plea and ensure that it is voluntary." *Id.* (quotations and citation omitted).

Page 10 of the Plea Agreement states the forfeited assets were not limited to the seized cash and Mr. Vowell's airplane. On page 12, it states "[t]he defendant agrees that the United States is not limited to forfeiture of the property specifically identified for forfeiture in this Plea Agreement," and that "substitute assets" could be used. Plea Agmt., at 12 (Dkt. No. 67 in Case No. 8:13-cr-94). It further states that Mr. Vowell waived all challenges "to any forfeiture carried out." *Id.* at 10. Mr. Vowell initialed each page of the agreement and then signed it. Thereafter, the Magistrate Judge before whom the plea was taken stated, "[a]fter cautioning and examining the defendant under oath concerning each of the subjects mentioned in Rule 11, I determined that the guilty plea was knowledgeable and voluntary as to the count." Report & Recommendation (Dkt. No. 71 in Case No. 8:13-cr-94).

While the agreement does not specifically state the government would seek $1,818,960, it does state the forfeiture would not be limited to the named property. Additionally, the facts to which Mr. Vowell pled show he knew large quantities of drugs were involved in the conspiracy and that each pound sold for $2,500 to $2,600. Based on the terms of the Plea Agreement, Mr. Vowell's acknowledgment of the terms, and the Magistrate Judge's representation, the court cannot conclude the plea, and consequential forfeiture, was entered unknowingly.

It also bears noting that Mr. Vowell faced the following penalties due to the amount of drugs: "a mandatory minimum term of imprisonment of five (5) years, and a maximum term of imprisonment of forty (40) years, a fine of up to $5 million, [and] a term of supervised release of at least four (4) years." Plea Agmt., at 2 (Dkt. No. 67 in Case No. 8:13-cr-94 (M.D. Fla.)). In exchange for his plea agreement, the government agreed to (1) not pursue any further charges against Mr. Vowell, (2) dismiss Count Two, (3), recommend a sentence at the low end of the guideline range, and (4) not oppose application of the safety valve provision under U.S. Sentencing Guidelines § 5C1.2, as long as Mr. Vowell met the requirements under 18 U.S.C. § 3553(f).

By accepting the Plea Agreement, Mr. Vowell's sentence was reduced from five years to one year and all fines (as opposed to forfeiture) were waived. Additionally, his supervised release was reduced from four years to three years. Had Mr. Vowell refused to cooperate with the government and accept responsibility, he would not have qualified for the safety valve reduction that allowed sentencing below the mandatory minimum. *See* 18 U.S.C. § 3553(f)(5). Yet, he still would have been subject to the $1,818,960 forfeiture amount. In other words, regardless of whether he accepted or rejected the plea, he still would have been subject to the same forfeiture amount.

Finally, as discussed above, the law allows Mr. Vowell to be subject to joint and several liability and the forfeiture amount does not violate the Eighth Amendment. Thus, nothing his counsel did resulted in an improper judgment of joint and several liability or an excessive fine in violation of the Eighth Amendment. Based on the totality of circumstances, the court concludes Mr. Vowell has failed to make a sufficient showing that his counsel's conduct was ineffective,

and an amended motion would not correct the deficiency.  The court therefore denies Mr. Vowell's motion to amend or strike the Forfeiture Money Judgment.

## **CONCLUSION**

For the reasons stated above, the court DENIES Mr. Vowell's Motion to Amend Judgment.  (Dkt. No. 5).

DATED this 26th day of August, 2016.

BY THE COURT:

Clark Waddoups
United States District Judge